# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Deree J. Norman, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1102 C.D. 2017 |
| | : | Submitted: March 9, 2018 |
| Public Utility Commission, | : | |
| Respondent | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT             FILED: June 12, 2018

        Deree J. Norman, *pro se*, petitions for review of an adjudication of the Pennsylvania Public Utility Commission (PUC) that dismissed his complaint that Philadelphia Gas Works (PGW) had overbilled him for service. The PUC concluded that Norman's evidence did not prove that PGW's invoices were inaccurate or excessive. Discerning no merit to Norman's contention that the PUC should have rejected PGW's evidence, we affirm the PUC.

        On June 18, 2015, Norman filed a complaint with the PUC alleging that over the course of 2012 to 2013, he had been double billed for the same service period. Formal Complaint, ¶1; Certified Record (C.R.) Item No. 1 at 7. The complaint also alleged that PGW's invoices included charges for the Customer Responsibility Program (CRP) even though Norman withdrew from the program in 2012. Formal Complaint, ¶3; C.R. Item No. 1 at 7. The complaint also alleged that PGW's charges were excessive because for several years, he had used gas only for a single hot water heater. Formal Complaint, ¶7; C.R. Item No. 1 at 8.

PGW filed an answer, stating that it issued a "shut off notice" to Norman on June 2, 2015. Answer, ¶4; C.R. Item No. 2 at 2. The answer also stated that Norman's account was still in arrears and that all of its invoices were correct. Answer, ¶4; C.R. Item No. 2 at 2-3.

The matter was referred to an Administrative Law Judge (ALJ) for a hearing, which was conducted telephonically. Both Norman and PGW presented evidence.

Norman testified that he became a PGW customer in 2005, when he moved into his current home, which had a gas stove, a gas hot water heater and a gas furnace. Norman removed the gas stove in 2008 and did not replace it until August 2015. In 2009, Norman contacted PGW regarding a possible gas leak. Concluding that the furnace and hot water heater were unsafe, PGW disconnected them from the gas line. Norman purchased a new gas hot water heater in 2009 but did not replace the furnace until May 2015. Between 2009 and 2015, Norman heated his home with kerosene. The only appliance using gas from 2009 through May 2015 was the hot water heater. Finally, he claimed that from August 2011 through October 2011 he should have not been charged at all because the hot water heater had been disconnected during that period.

Norman then testified about the CRP references on his invoices. He noted that PGW requested income information as well as his Social Security Number, which he provided. However, he has not been in the CRP program since 2012.

Norman submitted several invoices from 2012 through February 2013 to support his claim of double-billing. The June 2012 invoice showed a billing period from May 23rd through June 25th, and his July 2012 invoice showed a billing

2

period from June 22nd through July 25th. Stated otherwise, both invoices covered the period from June 22nd through June 25th. Norman testified that eight invoices from 2012 and one from 2013 also showed overlapping billing periods.

PGW presented the testimony of Adrian Crawford, a customer review officer. She acknowledged that Norman's bills had overlapping billing dates over the course of several months. She explained, however, that this did not result in double charges. Each invoice was based upon an "actual reading" by an "Automatic Meter Reading truck." Notes of Testimony, 9/24/2015, at 50-51; C.R. Item No. 5 at 50-51. A PGW service truck drives through the neighborhood and collects the meter readings electronically.

Crawford then explained that CRP provides assistance to lower income customers. To enroll, a customer must provide PGW information about household income. Once enrolled, the customer pays a monthly amount based on household income. As long as the monthly bill is paid timely, the customer's arrearages are frozen and reduced by one thirty-sixth each month the customer remains in the program.

Crawford submitted PGW business records relating to Norman's account from 2009 through 2015. The account log recorded Norman's complaints and PGW's responses. It documented that Norman was enrolled in CRP in 2008 but did not recertify in 2009. The log also showed that Crawford complained to the PUC when he was dropped from the program, and he was advised to reapply. The log then showed that on June 18, 2010, Norman was reenrolled in CRP. Under the agreement, he was required to pay a monthly CRP charge of $30.00, which was allotted between both current and past due charges.

The agreement froze Norman's arrearages at $2,524.69. Every month he was in the program, the arrearages were reduced by one-thirty-sixth. By 2013, his arrearage total had dropped from $2,524.69 to $213.81. When Norman did not reenroll in 2013, his invoices continued to include the remaining arrearage balance of $213.81 and $90 in CRP charges that Norman had not paid while in the program. Since he left the CRP, Norman's arrearages have continued to grow. By the time of the hearing, the past due amount was $580.61.

Again using PGW's account log, Crawford addressed Norman's claim that he was not using service in 2011. On August 29, 2011, Norman called PGW about a gas leak, which a PGW technician confirmed. Accordingly, the technician disconnected the furnace. On September 10, 2011, Norman reported another gas leak. A PGW technician responded and turned off Norman's gas water heater, noting that there was "water in basement" and that he told Norman to call a "plumber." PGW Exhibit No. 1 at 3; C.R. Item No. 5 at 164. He did not disconnect the hot water heater.

During his cross-examination of Crawford, Norman stated that as a result of Hurricane Irene, he had three feet of water in his basement on August 28, 2011. Therefore, a service technician could not have entered his basement the following day and disconnected the gas furnace. Crawford responded that PGW employees record the information in the account log contemporaneously and that neither she nor anyone else could tamper with the record.

The ALJ issued a recommended decision concluding that Norman did not prove that he had been improperly or inaccurately billed by PGW. Norman filed exceptions, accusing PGW of lying. The PUC denied the exceptions and adopted the ALJ's recommended decision in its entirety.

4

Norman has petitioned for this Court's review.[1] He asserts that the PUC erred because it relied upon PGW's false evidence, which consisted of inconsistent and unlawfully altered documents. By contrast, Norman asserts that his evidence clearly showed double-billing and overcharges.

"In a complaint for overbilling a customer of a public utility, the legislature has placed the burden of proof upon the complainant." *Burleson v. Pennsylvania Public Utility Commission*, 461 A.2d 1234, 1235 (Pa. 1983) (citing Section 332(a) of the Public Utility Code:[2] "Except as may be otherwise provided in [66 Pa. C.S. §315 (relating to proposed or existing rates)] or other provisions of this part or other relevant statute, the proponent of a rule or order has the burden of proof." 66 Pa. C.S. §332(a)). The PUC is the ultimate fact finder. *Energy Conservation Council of Pennsylvania v. Public Utility Commission*, 995 A.2d 465, 486 n.19 (Pa. Cmwlth. 2010). The PUC's findings are conclusive on appeal, if supported by substantial evidence of record. *Kviatkovsky v. Pennsylvania Public Utility Commission*, 618 A.2d 1209, 1211 (Pa. Cmwlth. 1992).

Norman first argues that he established multiple overlapping billing cycles. PGW responds that this was not a disputed fact. PGW agreed that in 2012 and 2013 several of Norman's bills contained overlapping billing periods. However, he was not billed by the day but, rather, upon actual usage as determined by a monthly meter reading. This was demonstrated by Crawford's credited testimony. The PUC's findings of fact are supported by substantial evidence and, thus, will not be set aside.

---

[1] This Court's scope of review of the PUC's adjudication determines whether it violated constitutional rights, committed an error of law, or made findings not supported by substantial evidence of record. *Burleson v. Pennsylvania Public Utility Commission*, 443 A.2d 1373, 1375 (Pa. Cmwlth. 1982), *aff'd*, 461 A.2d 1234 (Pa. 1983).

[2] 66 Pa. C.S. §§101-3316.

Norman next claims that the PUC erred in finding that he voluntarily enrolled in CRP, which was not proven by PGW. PGW responds that it did not have the burden to prove this point but, nonetheless, its business records fully documented his enrollment in CRP. Further, Norman's enrollment in CRP, which ended in February 2013, was in no way detrimental to him.

We agree with PGW. Its business records show that Norman was enrolled in CRP for a number of years, which could not have happened except by his voluntarily providing PGW with the qualifying data. The records also showed that he informally complained to the PUC when he was not continually enrolled. Even so, Norman clearly benefitted from the CRP because his participation reduced his $2,524.69 balance to $213.81.

Finally, Norman challenges the PUC's finding that a service technician visited his residence on August 29, 2011, to check a reported possible gas leak and "found the natural gas fired house heater connected." ALJ Initial Decision, 3/11/2016, at 3, Finding of Fact No. 7; C.R. Item No. at 4.[3] The finding is supported by substantial evidence, *i.e.*, PGW's account log. Although Norman argues that the account log was falsified, he presented no evidence to support this claim. Judicial notice can be used to establish when Hurricane Irene affected the Philadelphia area, but it cannot be used to establish its impact upon a single home in the area.

For these reasons, we affirm the PUC's adjudication.

_____
MARY HANNAH LEAVITT, President Judge

_____

[3] The ALJ misdated the year as 2012.

6

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Deree J. Norman,                              :
                    Petitioner                :
                                              :
            v.                                :  No. 1102 C.D. 2017
                                              :
Public Utility Commission,                    :
                    Respondent                :

# **O R D E R**

AND NOW, this 12th day of June, 2018, the order of the Pennsylvania Public Utility Commission dated July 13, 2017, in the above-captioned matter is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge