# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Deree J. Norman,                :
            Petitioner           :
                                    :
            v.                    : No. 1053 C.D. 2017
                                    : Submitted: March 2, 2018
Public Utility Commission,   :
            Respondent      :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                  FILED: July 12, 2018

        Deree J. Norman, *pro se*, petitions for review of an adjudication of the Pennsylvania Public Utility Commission (Commission) that dismissed Norman's complaint that PECO Energy Company (PECO) had overcharged him for electric service. Discerning no merit to Norman's challenges to the rulings made by the Administrative Law Judge (ALJ) in the course of the hearing, we affirm the PUC's adjudication.

        On March 18, 2015, Norman filed a formal complaint against PECO alleging that his meter was not correctly measuring his electricity usage. PECO filed an answer denying the material allegations of the complaint. The ALJ scheduled a hearing for June 29, 2015. PECO requested a continuance because of the unavailability of its witnesses, and Norman objected. He contended that PECO's request lacked "a legitimate business and or legal reason." Norman Brief, Appendix C, Exhibit 1, at 1. On June 1, 2015, the ALJ granted the continuance and rescheduled the hearing for September 3, 2015. The hearing was then rescheduled for October

29, 2015, to allow Norman the opportunity to have an independent electrician conduct a field test of his meter.

Also in June of 2015, Norman filed a motion for sanctions, alleging that PECO's counsel "intentionally presented fraudulent statements to this Commission in its Motion for a Continuance." *Id*., Exhibit 2, at 1. On June 19, 2015, the ALJ denied the motion for sanctions.

The ALJ held telephonic hearings on October 29, 2015, and January 21, 2016. Norman testified and presented the testimony of Mary McQuilken, an employee of PECO. Norman stated that his complaint is "not about the high bills; it's about the usage." Notes of Testimony (N.T.), 10/29/2015, at 48. He stated that the usage displayed on his electricity meter was fraudulent and questioned "the capability and intention and expectations of what these meters are." *Id.* at 49.

Norman testified that he has lived alone in a row home since 2004 or 2005. According to PECO's billing statements, Norman consumed 3,480 kWh during the winter of 2010-2011; 866 kWh during the winter of 2011-2012; 1,305 kWh during the winter of 2012-2013; 5,701 kWh during the winter of 2013-2014; and 2,628 kWh during the winter of 2014-2015. Norman Exhibit 10. Norman stated that the fluctuation in his electricity usage "makes no sense" because "the dynamics of [his] home haven't changed." N.T., 10/29/2015, at 56. Norman testified that he has been using kerosene heaters rather than electric heaters.

Norman testified that he knew "for a fact" that the meter installed at his residence is a "smart meter," which is capable of "two-way communication." *Id*. at 61. In support, Norman presented a website printout and selected pages from a meter manual, which state, *inter alia*, that the meter has the "ability to send and receive signals in both directions between the head end and the endpoint of an automated

2

meter-reading system." Norman Exhibit 13, at 4. Norman alleged that PECO manipulated his consumption through an "algorithm," which altered the data collected from his residence and then sent it back to his meter. *Id.* at 63.

McQuilken testified that she was employed by PECO as a high bill field technician. She visited Norman's residence in August of 2011; read the meter; and calculated Norman's average daily usage from his last bill reading. She also inventoried the appliances that she observed during her visit. McQuilken testified that she asked to see the kerosene heaters but was told that they had been sent out for service.

McQuilken visited Norman's residence again on September 24, 2015, accompanied by Thomas Lerro, a field foreman for high bill investigation. Mike Janiszewski, the electrician hired by Norman, was also present. McQuilken inventoried the appliances and conducted an actual meter test, which involved pulling the meter out of the meter board and placing a tester in the unit. The test established that the meter was operating properly. No foreign wiring was found at the property. Based upon the appliances inventoried, McQuilken estimated that the potential winter usage was 717 kWh per month based on national averages. McQuilken testified that the meter at the service address is an "AMR meter," which is not capable of two-way communication. N.T., 10/29/2015, at 85. She stated that "[a]ll it can do is send a reading." *Id*.

PECO presented the testimony of Richard King, its billing operations manager. According to King, the readings from Norman's meter are transmitted to PECO daily. Specifically, the meter communicates with "MCC," a device placed on a pole within a neighborhood of properties. N.T., 1/21/2016, at 203. The MCC collects the readings daily and transfers them to PECO's billing system. Unlike a

"smart meter," which is capable of sending and receiving data, the meter at Norman's residence only sends data to PECO. *Id.* at 213. King testified that PECO has not installed a smart meter at Norman's residence. Further, the meter readings were actual readings and not estimates.

Norman filed a motion for judgment on the pleadings. The ALJ treated the filing as "a partial final brief" because it discussed the evidentiary record. ALJ Decision at 3. The ALJ allowed Norman to file a supplemental brief, which Norman did on March 14, 2016, along with a motion for summary judgment. The ALJ did not consider the motion for summary judgment, holding that the filing is "not appropriate when the evidentiary record has been completed and both sides have presented their evidence." ALJ Decision at 4, n.2.

The ALJ issued an initial decision and order dismissing Norman's complaint. The ALJ held that Norman's evidence did not establish that his meter reported his electricity consumption incorrectly. Although the meter tests performed by PECO are "not necessarily determinative," Norman had to present "more than mere speculation" to support his claim. ALJ Decision at 12. Instead, Norman's evidence consisted of "selected pages from meter manuals." *Id.* The meter manuals described "two-way networks," but the ALJ credited King's testimony that the meter at Norman's address is an AMR meter, which is unable to receive information from PECO.

The ALJ noted that Norman's consumption "fluctuates significantly from one winter season to the next," and it shows no "consistent pattern of usage." ALJ Decision at 13. Although Norman claimed that he used kerosene heaters, he provided no supportive evidence. Further, Norman did not challenge the measurement of his electricity consumption during any other season. The ALJ

4

concluded that Norman's evidence did not show that his meter inaccurately reported his consumption.

Norman filed exceptions to the ALJ's initial decision. He challenged the ALJ's findings on PECO's investigation and complained that PECO's witnesses were not provided with copies of his exhibits for reference during the telephonic hearing. As such, Norman could not "completely and [] adequately" examine the witnesses or introduce evidence in his favor. Norman Exception at 11, ¶5. Norman further argued that the ALJ erred by admitting McQuilken's testimony, which was the product of "witness and evidence tampering." Norman Exception at 5, ¶17. Norman claimed that "McQuilken was clearly being coached by her supervisor" and that her testimony was "inconsistent and conflicting." *Id.*

By final decision and order of July 12, 2017, the Commission adopted the ALJ's decision. The Commission concluded that Norman's exceptions lacked merit because his evidence did not establish that PECO manipulated the consumption data to create his service invoices. Pointedly, Norman conceded in his exceptions that he did not prove that his consumption was reported inaccurately. Norman Exception at 11, ¶3. Finding that the ALJ properly considered the evidence, the Commission denied Norman's exceptions. Norman petitioned for this Court's review.[1]

On appeal, Norman raises seven issues for our consideration, which we combine into three for clarity.[2] First, Norman claims the ALJ's factual findings,

___

[1] This Court's scope of review of the Commission's decision is to determine whether the Commission violated constitutional rights, committed an error of law, or made findings not supported by substantial evidence of record. *Burleson v. Pennsylvania Public Utility Commission*, 443 A.2d 1373, 1375 (Pa. Cmwlth. 1982), *aff'd*, 461 A.2d 1234 (Pa. 1983).

[2] We have also rearranged the order of the issues for ease of disposition. In addition to the issues discussed above, Norman asserts that the ALJ and the Commission "fail[ed] to fully analyze,

5

adopted by the Commission, were not supported by substantial evidence. Second, Norman argues that the ALJ erred in failing to declare a mistrial when PECO's counsel failed to provide its witness with Norman's exhibits. Third, Norman argues that the ALJ erred by granting PECO a continuance and denying his motion for sanctions against PECO's counsel.

Norman first argues that the Commission's findings of fact are not supported by substantial evidence. He claims that by adopting the ALJ's findings, the Commission relied on "unverified, unsupported testimony" rather than documentary evidence that his meter is not a smart meter. Norman Brief at 13. He further argues that the ALJ erred in crediting the testimony of McQuilken.

"[I]n a complaint for overbilling a customer of a public utility, the legislature has placed the burden of proof upon the complainant." *Burleson v. Pennsylvania Public Utility Commission*, 461 A.2d 1234, 1235 (Pa. 1983). *See also* Section 332(a) of the Public Utility Code, 66 Pa. C.S. §332(a) ("Except as may be otherwise provided in [66 Pa. C.S. §315, relating to proposed or existing rates] or other provisions of this part or other relevant statute, the proponent of a rule or order has the burden of proof."). Where the utility presents evidence that it has tested the complainant's meter and found it to be accurate, the complainant may, nonetheless, prove his case by circumstantial evidence that would support a finding that the metered usage exceeded the actual usage. *Milkie v. Pennsylvania Public Utility Commission*, 768 A.2d 1217, 1220 (Pa. Cmwlth. 2001).

---

conceptualize and or comprehend the unlawful action of invasion of privacy"; erred in denying his motion for judgment on the pleadings; and violated his "[r]ight to a [f]air [a]dministration of [j]ustice." Norman Brief at 4. Norman did not raise these issues before the Commission; therefore, we do not consider them on appeal. *Placid v. Unemployment Compensation Board of Review*, 427 A.2d 748, 750 (Pa. Cmwlth. 1981).

The Commission is the ultimate fact finder. *Energy Conservation Council of Pennsylvania v. Public Utility Commission*, 995 A.2d 465, 486 n.19 (Pa. Cmwlth. 2010). The Commission's findings are conclusive on appeal, if supported by substantial evidence of record. *Kviatkovsky v. Pennsylvania Public Utility Commission*, 618 A.2d 1209, 1211 (Pa. Cmwlth. 1992). "In a substantial evidence analysis where both parties present evidence, it does not matter that there is evidence in the record which supports a factual finding contrary to that made by the fact-finder, rather, the pertinent inquiry is whether there is any evidence which supports the fact-finder's factual finding." *Energy Conservation Council of Pennsylvania*, 995 A.2d at 486 n.19 (quoting *Mulberry Market, Inc. v. City of Philadelphia, Board of License and Inspection Review*, 735 A.2d 761, 767 (Pa. Cmwlth. 1999)).

Here, Norman asserts that PECO manipulated his consumption data to generate his bills. In support, he points to webpage printouts and meter manuals he submitted to show that his meter is capable of two-way communication. He also presented a summary of billing statements showing his consumption of electricity fluctuated during the winter months of 2010 through 2015. However, the ALJ accepted PECO's direct evidence that its technicians tested the meter and found it was operating properly. The ALJ further credited the testimony of King, PECO's billing operations manager, that Norman's meter is an AMR meter, which is incapable of receiving communication from PECO. The Commission's findings are supported by substantial evidence of record. Accordingly, we reject Norman's argument to the contrary.

Norman next claims that the ALJ erred in failing to declare a mistrial when McQuilken, testifying from a remote location, was not supplied with Norman's exhibits. As such, he was unable to "elicit direct testimony from [the]

7

witness without his exhibits in the possession of said witness." Norman Brief at 12.

The record reveals, however, that Norman did not request a mistrial at the hearing:

> [Norman]: [W]ere you aware that the meter that you came to service was a two-way communication device?
>
> [McQuilken]: It is not a two-way communication device. That meter at your property is what we call an AMR meter. It sends a reading back, but there is no connection from our office to that meter to make it go on or off or anything else. All it can do is send a reading.
>
> ***
>
> [Norman]: So, does that go in conjunction with the information that is put out by the manufacturer of the meter?
>
> [McQuilken]: I am not familiar with the manufacturer of the meter.
>
> [Norman]: Your Honor, I would like [PECO's counsel] to give Ms. McQuilk[en] my exhibits.
>
> [McQuilken]: I'm on a remote site.
>
> ***
>
> [PECO's counsel]: I have a meter engineer who is probably better equipped to answer these questions. Ms. McQuilk[en] did not – she's not a meter expert. She's a high bill investigator.
>
> [ALJ]: Okay. Ms. McQuilk[en] did testify that she wasn't familiar with the manufacturing details of the meter, so, Mr. Norman, why don't you, if you have a piece of paper or whatever, write that question. It sounds like it's better posed to a different witness.
>
> ***
>
> [Norman]: Again, your Honor, I'm not going to be able to actually continue with my questioning if Ms. McQuilk[en] does not have access to my exhibits. I mean, how does she have access to PECO's exhibits if she's at a remote site, but not my exhibits?

8

> [ALJ]:   I can't answer that question for you, but Ms. McQuilk[en] is the person who completed this [utility] report, so I would suggest to you if you have questions about how this report was completed, that you ask her.

N.T., 10/29/2015, at 84-87.

It is well settled that a party to an administrative hearing may not raise on appeal any question, other than the validity of the statute, that was not raised to the agency unless allowed by this Court upon due cause shown.  2 Pa. C.S. §703(a); *Placid v. Unemployment Compensation Board of Review*, 427 A.2d 748, 750 (Pa. Cmwlth. 1981).  Because Norman did not request a mistrial and new hearing, we are precluded from considering this issue.

Even assuming that Norman's failure to request a mistrial did not result in a waiver of this issue, we conclude that the ALJ did not err in allowing the hearing to proceed.  McQuilken testified about her visits to Norman's residence in 2011 and 2015; the tests she conducted; and the reports she completed.  McQuilken acknowledged, and the ALJ found, that she was unfamiliar with the manufacturing details of the meter.  The ALJ credited King's testimony that the meter at Norman's residence is not a smart meter and is incapable of two-way communication.  In no way was Norman prejudiced by PECO's failure to provide his exhibits to McQuilken.

Finally, Norman argues that the ALJ erred by granting PECO's motion for continuance and denying his motion for sanctions against PECO's counsel.  Because Norman has raised this issue for the first time on appeal to this Court, the issue is waived.  *Placid*, 427 A.2d at 750.  Further, Pennsylvania Rule of Appellate Procedure 2116(a) requires that an appellant include in his brief a statement of questions involved setting forth "concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail."  PA. R.A.P.

9

2116(a). "No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." *Id.* Here, Norman does not raise the issue anywhere within the Statement of the Questions Presented. Therefore, we are precluded from considering the issue.

For all the above-stated reasons, we will affirm the order of the Commission.

_____
MARY HANNAH LEAVITT, President Judge

10

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Deree J. Norman,                    :
                    Petitioner      :
                                    :
          v.                        :   No. 1053 C.D. 2017
                                    :
Public Utility Commission,          :
                    Respondent      :

## **O R D E R**

AND NOW, this 12th day of July, 2018, the order of the Pennsylvania Public Utility Commission dated July 12, 2017, in the above-captioned matter is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge