IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Deree J. Norman,                          :
                Petitioner         :
                             :
      v.                                  :   No. 58 C.D. 2025
                             :
Pennsylvania Public Utility               :   Submitted: April 13, 2026
Commission,                               :
                Respondent         :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE STELLA M. TSAI, Judge


OPINION                                  FILED: May 18, 2026
BY JUDGE McCULLOUGH

Deree J. Norman (Petitioner), *pro se*, petitions for review of the December 19, 2024 Final Order of the Pennsylvania Public Utility Commission (PUC) that dismissed his formal complaint (Complaint) against PECO Energy Company (PECO), determining that PECO had a valid legal basis to terminate Petitioner's electric service. After careful review, we must affirm the PUC's order.

## I.    Factual and Procedural History

On April 29, 2024, Petitioner, a PECO electric customer, filed a Complaint with the PUC, which stated: "[s]top threatening to terminate my service. My payments are up to date and I Do Not have an outstanding balance." (Certified Record (C.R.), Item No. 1, at 3.) PECO filed an Answer and New Matter to the Complaint, admitting that it had served Petitioner with a 10-Day Termination Notice on April 26, 2024. PECO denied it did so because of an outstanding balance. Rather, it sent the 10-Day Termination Notice because it needs access to Petitioner's property

to install an Advanced Metering Infrastructure (AMI) Smart Meter, in order to calculate Petitioner's usage of electricity, but Petitioner has refused to allow access for PECO to install the AMI Smart Meter at his property. (C.R., Item No. 2, at 11-12.) PECO denied Petitioner's allegation that he currently has a "smart meter" at his property, averring instead that he has a Legacy Automatic Meter Reading (AMR) Meter, which PECO's system no longer supports.

In its New Matter, PECO asserted that the Complaint is barred by *res judicata* because the same issue of the installation of an AMI Smart Meter was previously litigated by Petitioner before the PUC.[1] (C.R., Item No. 2, at 15.) PECO further averred that the relief Petitioner seeks, *i.e.*, prevention of the installation of an AMI Smart Meter at his residence, is not possible because in *Povacz v. Pennsylvania Public Utility Commission*, 280 A.3d 975 (Pa. 2022), the Pennsylvania Supreme Court

[1] Petitioner has been before this Court on two previous occasions. In *Norman v. Pennsylvania Public Utility Commission* (Pa. Cmwlth., No. 1053 C.D. 2017, filed July 12, 2018) (*Norman I*), we affirmed the PUC's order dismissing Petitioner's complaint against PECO charging it with manipulating his electricity consumption through an "algorithm" which enabled PECO to alter the data collected from his meter and then send it back to his meter, resulting in him being overcharged. Petitioner testified that he knew "for a fact" that the meter installed at his residence is a "smart meter," which is capable of "two-way communication." Slip op. at 2. PECO's witnesses, on the other hand, testified that the meter at Petitioner's service address is an "AMR meter," which is not capable of two-way communication, and that unlike a "smart meter," which is capable of sending and receiving data, the meter at Petitioner's residence only sends data to PECO. *Id.* at 3-4. They also confirmed that PECO had not installed a smart meter at Petitioner's residence. The PUC credited PECO's witnesses and found that Petitioner's evidence did not establish that his meter reported his electricity consumption incorrectly and dismissed his complaint.

In *Norman v. Pennsylvania Public Utility Commission* (Pa. Cmwlth., No. 690 C.D. 2020, filed March 16, 2021) (*Norman II*), we affirmed the PUC's order dismissing Petitioner's complaint against PECO charging PECO with improperly terminating his electric service for nonpayment. Although the PUC found that PECO was not precluded from terminating Petitioner's service for nonpayment, the PUC granted Petitioner a five-year payment arrangement, and ordered: "That as long as [Petitioner] keeps the payment schedule stated in this Order, PECO [] shall not suspend or terminate his utility service except for valid safety or emergency reasons or assess late payments or finance charges against his account." *Norman II*, slip op. at 20.

ruled that Section 2807(f)(1) and (2) of the Public Utility Code (Code), 66 Pa.C.S. § 2807(f)(1) and (2), commonly known as Act 129,[2] mandates that electric distribution companies (EDCs) furnish "smart meters" to all electric customers and does not provide customers the ability to opt out of having a "smart meter" installed.[3] *Povacz*,

---

[2] Section 2807 of the Code was added by the Act of October 15, 2008, P.L. 1592, No. 129, and took effect on November 14, 2008. Section 2807(f)(1) and (2) of the Code provides:

> **(f) Smart meter technology and time of use rates**.--
> (1) Within nine months after the effective date of this paragraph, electric distribution companies [(EDCs)] shall file a smart meter technology procurement and installation plan with [the PUC] for approval. The plan shall describe the smart meter technologies the [EDC] proposes to install in accordance with paragraph (2).
>
> (2) [EDCs] shall furnish smart meter technology as follows:
>
>> (i) Upon request from a customer that agrees to pay the cost of the smart meter at the time of the request.
>>
>> (ii) In new building construction.
>>
>> (iii) In accordance with a depreciation schedule not to exceed 15 years.

66 Pa.C.S. § 2807(f)(1) and (2).

[3] The *Povacz* Court noted however that

> [a]lthough Act 129 does not provide an electric customer with the right to opt-out of the installation of a smart meter at [his or her] residence, [a customer] may file a complaint raising a claim that installation of a smart meter violates Section 1501 of the Code.
>  . . . .
> To carry [his or her] burden of proof on a Section 1501 claim, a smart meter challenger may be required to present medical documentation and/or expert testimony demonstrating that the furnishing of a smart meter constitutes unsafe or unreasonable service in violation of Section 1501 under the circumstances presented.

**(Footnote continued on next page…)**

280 A.3d at 998-99. PECO also asserted that its Electric Tariff and the PUC allow the company to terminate service if access to its meters is refused. (C.R., Item No. 2, at 16.)

In his Answer to PECO's New Matter, Petitioner stated that, contrary to PECO's assertions, he was not attempting to relitigate the matter of the accuracy of PECO's smart meter algorithms previously litigated in *Norman I* and *Norman II* and that the doctrine of *res judicata* should therefore not apply. (C.R., Item No. 4, at 30.) He asserted that his Complaint was about PECO's attempts to install a so-called "Advanced Smart Meter," which he believed was beyond the scope of Act 129, which mandated installation of smart meters, but not "Advanced Smart Meters." *Id.* Petitioner further averred that he "currently has a digital wireless Smart Meter installed at his property." *Id.* at 29. Describing the AMI Smart Meter PECO seeks to install as an "Advanced Smart Meter,"[4] Petitioner alleged that there is "an indisputable distinction" between an "Advanced Smart Meter" and a "smart meter" and that PECO is "regulatorily prohibited" by [Section 57.255(a) of the PUC's Regulations] 52 Pa. Code § 57.255(a), from forcing the installation of an "Advanced Smart Meter" at his service address. *Id.* Specifically, he argued that Section 57.255(a) of the PUC's Regulations[5] only permits PECO to install an "Advanced Smart Meter" upon prior

---

*Povacz*, 280 A.3d at 999-1000.

[4] To the extent this Court uses the term "Advanced Smart Meter" in this opinion, we do so solely in reference to Petitioner's arguments and such use is not in any way meant to countenance the meaning attributed by Petitioner.

[5] Section 57.255(a) of the PUC's Regulations, entitled "EDC responsibilities regarding advanced metering," provides:

**(Footnote continued on next page…)**

4

"written request" of a customer. He alleged that "Legislators had the foresight to allow customers to opt out of having an Advanced Smart Meter installed because an Advanced Smart Meter was above and beyond the scope of Act 129." (C.R., Item No. 4, at 30.) He further averred that "Advanced Smart Meters" allow PECO to have "the unfettered access to control and manipulate data in accordance with PECO's projected earnings goals." *Id.*

PECO also filed Preliminary Objections, which essentially mirrored the affirmative defenses raised in its New Matter: (1) *res judicata*; (2) mandatory implementation of "smart meter" installation; and (3) termination of service permitted for a customer's failure to allow PECO access to its meter. (C.R., Item No. 3, at 20-26.)

In his Answer to PECO's Preliminary Objections, Petitioner took exception to PECO's reference to the AMI Smart Meter as a smart meter rather than an "Advanced Smart Meter." (C.R., Item No. 7, at 48.) He asserted that "[t]here is an indisputable distinction between the two types of smart meters." *Id.* He explained that he was not disputing the installation of a smart meter at his property but was refusing to "allow PECO to exchange his current Smart Meter with an Advanced Smart Meter which is prohibited pursuant to [Section 57.255(a) of the PUC's Regulations]." *Id.* In response to PECO's argument that his Complaint was barred by r*es judicata*, Petitioner reiterated his prior position that the current matter regarding the installation of an

---

> (a) **Upon written request** from both a customer and the EGS of that customer, the EDC shall make available and install for use **a qualified advanced meter** or meter-related device. The qualified advanced meter shall be the customer's billing meter and shall meet certain standards established by the [PUC] in § 57.254 (relating to advanced meter standards).

52 Pa. Code § 57.255(a) (emphasis added).

"Advanced Smart Meter" at his residence was never previously addressed by the PUC. *Id.* Petitioner's Answer to PECO's Preliminary Objections included the following four attachments labeled as Exhibits 1 through 4, respectively: (1) a copy of a 10-day shut off notice that he received from PECO on April 26, 2024; (2) a copy of a 72-hour shut off notice that he received on May 20, 2024; (3) a picture of a FlexNet AMI Smart Meter that he alleged PECO is proposing to install at his service address; and (4) a picture of the Centron Meter that he alleged is currently installed at his service address. (C.R., Item No. 7, at 58-64.)

The Preliminary Objections were referred to an Administrative Law Judge (ALJ). On October 4, 2024, the ALJ issued her Initial Decision recommending that Petitioner's Complaint be dismissed because PECO committed no violations when it issued the Termination Notices to Petitioner. First, the ALJ accepted Petitioner's factual averment that he was not asserting an algorithm-based claim and found that the doctrine of *res judicata* did not apply. Considering next whether Petitioner could "opt out" of the installation of an AMI Smart Meter at his property, the ALJ recognized that Act 129 does not provide a customer opt out provision for installation of a smart meter, and that any viable customer challenge raised against smart meter installation must satisfy the preponderance of the evidence standard for a violation of Section 1501 of the Code, 66 Pa.C.S. § 1501 (mandating that every public utility "shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities"). The ALJ found that Petitioner did not present evidence necessary to prevail on a Section 1501 claim, noting that he specifically admitted in his Reply to New Matter that he was making "no assertions of possible harm from radio waves emitted by any type of meter." (ALJ Initial Decision, at 7.) Regarding PECO's notices of termination, the ALJ noted that Petitioner admitted that he has refused to allow PECO to change his

6

meter, and that such refusal provides a valid basis to commence termination proceedings under Section 1406(a)(4) of the Code, *formerly* 66 Pa.C.S. § 1406(a)(4),[6] and the PUC's regulation at 52 Pa. Code § 56.81(3).[7] The ALJ further recognized that PECO's Electric Tariff contains a Right of Access provision that requires PECO to have access to the premises of its customers to, *inter alia*, change and install equipment.[8]

Petitioner filed Exceptions, arguing that the ALJ erred by failing to recognize that, because PECO sought to install an "Advanced Smart Meter" at his service address, Section 57.255(a) of the PUC's Regulations provides that he must affirmatively opt in to the installation, and he has not so opted. (C.R., Item No. 19.) More specifically, Petitioner argued that Act 129 only addresses the installation of a smart meter, not "Advanced Smart Meters," and that Section 57.255(a) of the PUC's Regulations prohibits PECO from changing his current smart meter to an "Advanced Smart Meter" without his prior written request or consent. *Id.* at 306.

---

[6] This provision, which was in effect when the ALJ and PUC issued their determinations, permitted a public utility to terminate service for, *inter alia*, a customer's failure to permit access to meters for the purpose of replacement. This provision expired on December 31, 2024, pursuant to the Act of October 22, 2014, P.L. 2545, § 8, 66 Pa.C.S. § 1419.

[7] 52 Pa. Code § 56.81(3) authorizes a public utility to terminate service after notice for, *inter alia*, a customer's "[f]ailure to permit access to meters, service connections or other property of the public utility for the purpose of replacement, maintenance, repair or meter reading."

[8] The Right of Access Provision in PECO's Electric Tariff provides:

> [E]mployees shall have access to the premises of the customer at all reasonable times for the purpose of reading meters, and for installing, testing, inspecting, repairing, removing or changing any or all equipment belonging to the Company.

(ALJ Initial Decision, at 8 (citing PECO's Right of Access Tariff provision).)

On December 19, 2024, the PUC denied Petitioner's Exceptions and adopted the ALJ's Initial Decision in its entirety. It concluded that Section 57.255(a) of its Regulations is inapplicable here for multiple reasons. First, Section 57.255(a) of the Regulations, which was adopted on December 26, 1998, is not applicable for purposes of PECO's universal smart meter deployment obligations. Instead, it concluded that both Act 129 and PECO's approved smart meter procurement and installation plan approved in the 2013 PECO Smart Meter Order are the applicable statutory and regulatory provisions. It further concluded that Act 129 was enacted almost a decade after Section 57.255(a) of its Regulations was adopted; therefore, the provisions of Act 129 superseded the Regulation. It also rejected Petitioner's so-called distinction between a "qualified advanced meter" (referenced in Section 57.255(a) of the Regulations) and a smart meter (as that term is defined in Act 129). Instead, the PUC found that the "qualified advanced meters" referenced in Section 57.255(a) of its Regulations were "included within the definition" of "smart meter technology" in Act 129[9] and that there was no basis to support that in enacting Act 129, the legislature

---

[9] Act 129 defines "smart meter technology," as follows:

> As used in this section, the term "smart meter technology" means technology, including metering technology and network communications technology **capable of bidirectional communication**, that records electricity usage on at least an hourly basis, including related electric distribution system upgrades to enable the technology. The technology shall provide customers with direct access to and use of price and consumption information. The technology shall also:
>
> (1) Directly provide customers with information on their hourly consumption.
>
> (2) Enable time-of-use rates and real-time price programs.

**(Footnote continued on next page…)**

8

intended to exempt "qualified advanced meters" from the definition of "smart meter technology." (PUC Final Order, at 25.) Although the PUC did not find a conflict between Act 129 and Section 57.255(a) of its Regulations, it further noted that even if a conflict existed, the provisions of the Code would control. *Id.* at 27 (citing *Equitable Gas Co. v. Wade*, 812 A.2d 715 (Pa. Super. 2002) (where the General Assembly amends a statute that is inconsistent with a promulgated regulation, the regulation must yield to the statute). The PUC found that "Act 129 is the prevailing statutory authority governing smart metering technology for PECO's customers." (PUC Final Order, at 27.) Next, the PUC concluded that Petitioner could not prevail in his attempt to maintain electric service while simultaneously denying PECO access to replace his meter, as PECO's Electric Tariff contains a Right of Access provision, which has the full force of law. *Id.* at 29 (citing *Kossman v. Pennsylvania Public Utility Commission*, 694 A.2d 1147 (Pa. Cmwlth. 1997); *Stiteler v. Bell Telephone Company of Pennsylvania*, 379 A.2d 339 (Pa. Cmwlth. 1977)). Finally, the PUC noted that both the Code and Regulation at 52 Pa. Code § 56.81(3) authorize an EDC to commence termination proceedings due to the customer's refusal to allow the utility to access his meter for purposes of replacement. (PUC Final Order, at 29.)

---

(3) Effectively support the automatic control of the customer's electricity consumption by one or more of the following as selected by the customer:
    (i) the customer;
    (ii) the customer's utility; or
    (iii) a third party engaged by the customer or the Customer's utility.

66 Pa.C.S. § 2807(g) (emphasis added).

Petitioner now petitions for this Court's review.[10]  Petitioner raises five issues in his brief,[11] which we have condensed into three for clarity: (1) whether the PUC properly determined that the installation of a smart meter at Petitioner's service address was governed by Act 129 and not Section 57.255(a) of the PUC's Regulations; (2) whether the PUC properly determined that PECO could terminate Petitioner's service for his failure to provide PECO with access to replace his existing meter with an AMI smart meter; and (3) whether the PUC committed an error of law or an abuse of judicial discretion or exercised bias by failing to find PECO in contempt of its prior order issued and affirmed by this Court in *Norman II*.

## II.    Analysis

### A.  *52 Pa. Code § 57.255(a)*

Petitioner first contends that the meter currently installed at his residence is a "smart meter," and PECO is attempting to replace his "smart meter" with a "Advanced Smart Meter," *i.e.*, a "qualified advanced meter," without his written

---

[10] This Court's scope of review of the PUC's adjudication determines whether it violated constitutional rights, committed an error of law, or made findings not supported by substantial evidence of record. *Burleson v. Pennsylvania Public Utility Commission*, 443 A.2d 1373, 1375 (Pa. Cmwlth. 1982), *aff'd*, 461 A.2d 1234 (Pa. 1983).  The PUC's "interpretations of the Code . . . and its own regulations are entitled to great deference and should not be reversed unless clearly erroneous." *Energy Conservation Council of Pennsylvania v. Public Utility Commission*, 995 A.2d 465, 478 (Pa. Cmwlth. 2010).  This Court should defer to the PUC's interpretations of the Code and its own Regulations unless its interpretations are clearly erroneous. *Popowsky v. Public Utility Commission*, 706 A.2d 1197, 1203 (Pa. 1997).  We may not "substitute [our] judgment for that of the PUC when substantial evidence supports the PUC's decision on a matter within the commission's expertise." *Id.* at 1201. "Judicial deference is even more necessary when the statutory scheme is technically complex." *Id.* at 1203.

[11] In addition to the issues discussed above, Petitioner asserts that the PUC was "complicit in violating Appellant/Petitioner's rights as afforded by the United States Constitution by denying Appellant/Petitioner honest service." (Petitioner's Brief at 4.)  Petitioner did not raise this issue before the PUC; therefore, we do not consider it on appeal. *Placid v. Unemployment Compensation Board of Review*, 427 A.2d 748, 750 (Pa. Cmwlth. 1981).

consent in violation of Section 57.255(a) of the PUC's Regulations. We find his argument meritless for several reasons.

First, in *Norman I*, it was established by the findings of the ALJ, adopted by the PUC, and affirmed by the Court that the meter currently installed at Petitioner's residence is not a smart meter because it is incapable of two-way communication, *i.e.*, sending and receiving data. Rather, it is a legacy AMR meter that is only capable of sending a reading to PECO. To the extent Petitioner attempts to re-litigate this factual and evidentiary matter, it has been fully litigated in the proceedings before the PUC and this Court in *Norman I* and, thus, it is not properly before this Court now. *Malone v. West Marlborough Township Board of Supervisors*, 603 A.2d 708, 711 (Pa. Cmwlth. 1992). Therefore, for purposes of this appeal, we will accept the PUC's prior determination, and its position in the instant case, that PECO is not attempting to "replace a smart meter" at Petitioner's residence.

Second, as the PUC found, the AMI Smart Meter that PECO seeks to install at Petitioner's residence is a smart meter—not an "Advanced Smart Meter." As the PUC points out, "Advanced Smart Meter" is a term of Petitioner's own creation that has no basis in the Code, or any PUC Regulation or order. Apparently, seizing upon the term "**Advanced** Metering Infrastructure meter" or "AMI Smart Meter" (which is used interchangeably with the term "smart meter" within the industry), Petitioner appears to conflate an AMI Meter with the "qualified **advanced** meters" described in Section 57.255(a) of the PUC's Regulations. This confusion is the underpinning of his claim that PECO had no right to terminate his service under Section 57.255(a) of the PUC's Regulations because he never requested the installation of an "Advanced Smart Meter" in writing. It is also the essence of his argument that Act 129 includes only the requirement of the installation of a smart meter at the property address

11

for each residential account, but not the installation of an "Advanced Smart Meter." However, as explained by the PUC, Petitioner is simply mistaken in his belief that an "Advanced Smart Meter" (in his words) and a "qualified advanced meter" (as described in 52 Pa. Code § 57.255(a)) are the same thing. (PUC Final Order, at 24.)

In addressing Petitioner's argument that Section 57.255(a) of the PUC's Regulations is applicable, the PUC stated:

> Upon review, we conclude that 52 Pa. Code § 57.255(a) is inapplicable here for multiple reasons. First, 52 Pa. Code § 57.255, EDC responsibilities regarding advanced metering, which was adopted on December 26, 1998, is not applicable for purposes of PECO's universal smart meter deployment obligations. Instead, both Act 129 and PECO's approved smart meter procurement and installation plan approved in the 2013 PECO Smart Meter Order are the applicable statutory and regulatory provisions.
>
> By way of further context, Act 129 was enacted almost a decade after 52 Pa. Code § 57.255 was adopted. Therefore, the provisions of Act 129 superseded that of Section 57.255 of our Regulations. Act 129 culminated, *inter alia*, in the Pennsylvania General Assembly directing that EDCs with more than 100,000 customers file smart meter technology procurement and installation plans with the Commission for approval. 66 Pa.C.S. § 2807(f); Smart Meter Implementation Order at 34-35. Act 129 defined "smart meters," as follows:
>
>> As used in this section, the term "smart meter technology" means technology, including metering technology and network communications technology capable of bidirectional communication, that records electricity usage on at least an hourly basis, including related electric distribution system upgrades to enable the technology. The technology shall provide customers with direct

access to and use of price and consumption information. The technology shall also:

(1) Directly provide customers with information on their hourly consumption.

(2) Enable time-of-use rates and real-time price programs.

(3) Effectively support the automatic control of the customer's electricity consumption by one or more of the following as selected by the customer:

(i) the customer;

(ii) the customer's utility; or

(iii) a third party engaged by the customer or the customer's utility.

66 Pa.C.S. § 2807(g).

Accordingly, as the more recent enactment, Act 129's statutory definition of "smart meter technology" is controlling. "Smart meter technology" includes meters that are capable of bidirectional communication, and which also meet the enumerated criteria necessary to provide customers with hourly consumption information, facilitate time of use rates and real time price programs, and effectively support automatic control of the customer's electricity consumption. Simply put, there is no basis to support that in enacting Act 129, the legislature intended to exempt "Advanced Meters" from the definition of "smart meter technology."

(PUC Final Order, at 25-27.)

The PUC elaborates upon the differences in its brief, explaining that the "qualified advanced meters" referenced in Section 57.255(a) of the Regulations do not have the same functionality that the smart meters mandated by Act 129 are required to

have. (PUC's Br. at 22-23.) Specifically, Section 57.254 of the PUC's Regulations (related to advanced meter standards) require that a qualified advanced meter

> . . . shall be capable of measuring hourly usage and may support one or more functional requirements, **such as** the ability to do **one or more** of the following:
>
> (1) Modify a profile interval.
>
> (2) Provide a communications port for a customer to monitor usage.
>
> (3) Provide a pulse output to allow for usage monitoring.
>
> (4) Provide password protection.
>
> (5) Measure in two directions.
>
> (6) Have multiple callout capability.

52 Pa. Code § 57.254 (emphasis added).

When compared to the definition for "smart meter technology" set forth by the General Assembly in Section 2807(g) of the Code, 66 Pa.C.S. § 2807(g), it is evident that advanced meters and smart meters (also known as AMI meters) are not equivalent technologies. As the PUC noted, smart meters have the capability to (1) directly provide customers with information on their hourly consumption, (2) enable time-of-use rates and real-time price programs, and (3) effectively support the automatic control of the customer's electricity consumption by the customer, the customer's utility, or a third party engaged by the customer or customer's utility. (PUC's Final Order at 26) (citing 66 Pa.C.S. § 2807(g)). These functionalities are not amongst the advanced meter standards set forth in Section 57.254 of the PUC's Regulations.

14

Moreover, it is axiomatic that all regulations "must be consistent with the statute under which they were promulgated." *Slippery Rock Area School District v. Unemployment Compensation Board of Review*, 983 A.2d 1231, 1241 (Pa. 2009). As the PUC noted, the Regulations at Subchapter O (Advanced Meter Deployment) of Chapter 57 (Electric Service), 52 Pa. Code §§ 57.251-57.259, were promulgated in December 1998 in response to the General Assembly's 1996 amendment of the Code to provide for the restructuring of the electric utility industry in the Electricity Generation Customer Choice and Competition Act (Competition and Choice Act), 66 Pa.C.S. §§ 2801-2815. When initially enacted, Section 2807 of the Competition and Choice Act permitted EDCs to "require the customer install at the customer's expense enhanced metering capability sufficient to match the energy delivered by the electric generation supplies with consumption by the customer." 66 Pa.C.S. § 2807(a). Section 57.255(a) of the Regulations, in turn, instructed EDCs to install an advanced metering device at the request of an early technology adopter.

However, in 2008, the General Assembly amended various provisions of the Competition and Choice Act with Act 129 and addressed the use of smart meter technology.[12] Act 129 now **requires** the installation of smart meters in all customer residences, with no option to opt out.[13] *Povacz*, 280 A.3d at 998. Thus, to the extent that Section 57.254(a) of the Regulations supported customer **choice** in the use of early advanced metering technology, it is inconsistent with Act 129. Under Act 129, the authority to select and install a certain type of electric meter rests solely with EDCs, in

---

[12] *See* Section 2807(f), (g) of the Code, 66 Pa.C.S. § 2807(f), (g).

[13] An EDC customer with concerns about smart meters may seek an accommodation from the PUC or his EDC by establishing by a preponderance of the evidence that installation of a smart meter violates Section 1501 of the Code, 66 Pa.C.S. § 1501 (public utility shall furnish safe and reasonable service). *Povacz*, 280 A.3d at 998, 1005-06. Here, however, Petitioner's pleadings neither asserted, nor established, a basis under Section 1501 of the Code that is necessary to prevail.

this case PECO, not the customer, "regardless of a customer's preference." *Povacz*, 280 A.3d at 992. For this, and the other reasons articulated by the PUC, we agree that Act 129 has superseded the PUC's regulations at Subchapter O by requiring that any AMR Legacy meters that were previously deployed are now to be replaced with smart meters for EDC's with over 100,000 customers.

Accordingly, we find Petitioner's reliance on Section 57.255(a) of the PUC's Regulations is misplaced and his argument that PECO was required to obtain his written request before installation merits no relief.

### B. *Termination of Service*

Petitioner further contends that the PUC erred by finding that his refusal to permit PECO access to replace his AMR Legacy meter with the AMI Smart Meter was a valid basis for PECO to terminate his electric service.

The PUC concluded that Petitioner's decision to continue to deny PECO access to his meter provides a viable legal basis for PECO to terminate service at his address. Relying first on the "Right of Access" provision in PECO's Electric Tariff, the PUC found that PECO has the right to access the premises of a customer for the purpose of, among other things, removing or changing company meters. The Right of Access provision states that PECO's employees "shall have access to the premises of the customer at all reasonable times for the purpose of reading meters, and for installing, testing, inspecting, repairing, removing or changing any or all equipment belonging to the [c]ompany." (PUC's Final Order, at 28-29) (citing PECO Right of Access tariff provision). Moreover, our Supreme Court has already recognized in *Povacz* that, "pursuant to PECO's [Electric T]ariff, a consumer who wants electric service contractually agrees to the installation of a meter that is designed to capture their electricity usage." *Povacz*, 280 A.3d at 994. "PECO chooses the type of meter,

16

owns the meters it installs, and has a right to access private property to test, maintain, and replace its meters." *Id.* "PECO may terminate electric service to customers who refuse access to an electric meter." *Id.* As a public utility, PECO's Electric Tariff has the full force of law, and it is binding upon both PECO and its customers. 66 Pa.C.S. § 316; *Stiteler v. Bell Telephone Company of Pennsylvania*, 379 A.2d 339 (Pa. Cmwlth. 1977).

Furthermore, the PUC observed that both (former provisions of) the Code and the PUC's Regulations provide that, subject to customer notification, a public utility may terminate service in circumstances where the customer does not permit the company to access the meter for replacement. Specifically, Section 1406(a)(4) of the Code, *formerly* 66 Pa.C.S. § 1406(a)(4), permitted PECO to terminate Petitioner's service for his "failure to permit access to meters for the purpose of replacement."

The PUC's regulation at 52 Pa. Code § 56.81(3), which remains in effect, also authorized PECO to terminate Petitioner's service for his "[f]ailure to permit access to [his] meter[]" for "the purpose of replacement."

We agree with the PUC's reasoning and conclude that PECO's Electric Tariff, the Code, and the Regulations could not be more clear. PECO is authorized to commence termination proceedings due to a customer's refusal to allow it access to his meter for purposes of replacement. We, therefore, reject Petitioner's challenge to the Termination Notices, and conclude that PECO was within its authority to terminate Petitioner's electric service for his refusal to allow PECO to access his AMR Legacy meter for replacement with an AMI Smart Meter.

### C. *Contempt*

Finally, Petitioner claims that the PUC's order is in "contempt" and cites to the following ordering paragraph from *Norman II*, where he was granted a payment

arrangement: "as long as [Petitioner] keeps the payment schedule stated in this Order, PECO [] shall not suspend or terminate his utility service except for valid safety or emergency reasons or assess late payments or finance charges against his account." *Norman II*, slip op. at 20.

The PUC's order in no way conflicts or interferes with the ordering paragraph language from *Norman II* where Petitioner was granted a payment arrangement as a condition of having his electricity turned back on. As noted in *Norman II*, PECO's termination of Petitioner's electric service was due to his nonpayment. That order does not restrict or eliminate the meter access that PECO is entitled to under its Electric Tariff and the Code and Regulation provisions discussed above. Accordingly, we find this issue to be without merit.

### III.    Conclusion

In sum, PECO has a statutory obligation to deploy smart meter technology to its electric service customers, including Petitioner. Petitioner has refused PECO access to install a smart meter and has neither claimed nor demonstrated that installation of a smart meter would be a violation of Section 1501. PECO has a right, pursuant to its PUC-approved Electric Tariff, to access its meter for replacement activities and also a right, pursuant to PUC regulation and orders, to initiate termination proceedings to a customer who denies PECO access to its meter. The PUC properly found that no relief was possible for Petitioner and dismissed his Complaint.

Accordingly, the PUC's December 19, 2024 Final Order is affirmed.


                        _____
                        PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Deree J. Norman,                                    :
           Petitioner                  :
                                       :
           v.                          :      No. 58 C.D. 2025
                                       :
Pennsylvania Public Utility                         :
Commission,                                         :
           Respondent                  :

## ***ORDER***

      AND NOW, this 18th day of May, 2026, the December 19, 2024 Final Order of the Pennsylvania Public Utility Commission is hereby AFFIRMED.

 

                                      _____
                                      PATRICIA A. McCULLOUGH, Judge